**CIRCUIT COURT OF WARREN COUNTY**

Henderson County, N.C.,
Department of Social Services

    v.

Elaine C. Lehman and
Robert A. Lehman

November 21, 1986

Case No. (Chancery) H86005081

By JUDGE HENRY H. WHITING

The narrow issue before the Court is the right of the Henderson County, North Carolina, Department of Social Services to collect past and future support payments made for the minor[1] children of the defendants. Custody was vested in that Department by an order of the Henderson County General District Court in 1983 which has not been appealed and is now final. Later the agency placed both children with relatives in the State of Maryland but made monthly Aid to Families with Dependent Children payments for the support of both children beginning in June of 1983 and continuing up to date. The fact of the payments is not in dispute, but the parents claim they were "too high"; however, the issue before the Court at this time requires a statutory construction of the Virginia Uniform Reciprocal Enforcement of Support Act (hereafter URESA) to determine whether:

(1) A non-resident agency may invoke its provisions in this State where only the parents reside here.

---

[1] One child has become eighteen years of age, and it is agreed that no liability exists after that time.

(2) That agency is an "obligee" under that statute when the children have been placed in homes outside of North Carolina.

(3) Payments made by the agency prior to filing its URESA petition in the Virginia courts may be collected under the URESA provisions.

We turn to the statute to answer the contentions made.

Section 20-88.15 imposes the "[d]uties of support arising under the laws of this State, when applicable under § 20-88.18 [upon] the obligor present in this State regardless of the presence or residence of the obligee." Section 20-88.13(8) defines an "obligee" in part as "a state or political subdivision to whom a duty of support is owed or. . . that has commenced a proceeding for enforcement of an alleged duty of support or for registration of a support order." Section 20-88.13(7) defines an "obligor" as "any person owing a duty of support or against whom a proceeding for enforcement of a duty of support or registration of a support order is commenced." The "duty of support" is defined as including not only court-ordered support but also "the duty to pay arrearages of support past due and unpaid." § 20-88.13(6).

Where the statute describes a "state or political subdivision" as an obligee, by definition in § 20-88.13(1) that "includes any state of the United States" and by implication any of its political subdivisions and specifically would include Henderson County, North Carolina, and § 20-88.18 explicitly states that only the obligor need reside in the State. Thus the North Carolina agency may maintain this URESA action *if* the duty of support is "applicable under § 20-88.18." Section 20-88.15.

The "duties of support enforceable under this law are those imposed *or imposable* under the laws of any state where the obligor was present during the period or any part of the period for which support is sought" (emphasis added) by the express terms of § 20-88.18. Whether the obligor resided in Virginia or elsewhere, the duty of past and future support is imposable under Section 20-88.19 if a Virginia political subdivision had furnished support, and if the support was furnished by a North Carolina political subdivision the duty of support is imposable under § 52A-8.1, North Carolina General Statutes, giving a county of North Carolina the same right as the obligee to whom that support was furnished "to invoke

[URESA] for the purpose of *securing reimbursement for such support* and of obtaining continuing support." (Emphasis added.)

The above analysis leads me to conclude that the terms of the statute authorize:[2] (1) the Henderson County Department of Social Services to institute this proceeding even though only the responsible parents reside in Virginia and the children reside in Pennsylvania, and (2) the claim may include support in arrears whether fixed by Court order ("imposed" under the statute) or due by payments made for support ("imposable" under the statute).

The collateral contentions do not seem on point to me. They are:

(1) A court cannot modify a previously *ordered* support *decree*. We are not concerned with *modification* of a *court-imposed decree*, we are dealing with the moral and legal duty of a parent to support his child which has not been the subject of any court decree.

(2) North Carolina lost its jurisdiction under the North Carolina, Pennsylvania and Virginia "Interstate Compact on the Placement of Children" statutes by referring the child to Pennsylvania and later to Maryland. A quick glance at the statutes in Virginia, North Carolina, Maryland and Pennsylvania reveals that such jurisdiction is expressly reserved in the following language identical to each Code:

> ARTICLE V - *Retention of Jurisdiction* - The sending agency [subdivision of state which "sends, brings or causes to be sent or brought any child to another state," as shown in definition section] shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have if the child had remained in the sending agency's state [and]. . . shall continue to have financial responsibility for support and maintenance of the child during

---

[2] Even without a necessity to apply the liberality of construction obviously required because its remedial nature designed "to improve and extend by reciprocal legislation the enforcement of duties to support." Section 20-88.12, Virginia Code; Scott v. Sylvester, 220 Va. 182 (1979).

the period of placement. § 63.1-219.2, Article V, Virginia Code; § 110-57.1, Article V, N.C. Gen. Stat.; § 5-606(a) Md. Fam. Law Code Ann.; 62 Pa. Stat. Ann., § 761, Article V.

The contention that Pennsylvania somehow became the only venue because of this placement is not only not supported by any of the statutes but would create an absurdity forcing the obligee to sue the obligor in a state foreign to both of them. The legislators have clearly created a direct right of action in the State of the obligor's residence no matter where the children were placed.